[Cite as *State v. Brooks*, 2012-Ohio-3278.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25033 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 08-CRB-1342 |
| v. | : | |
| | : | |
| MARK A. BROOKS | : | (Criminal Appeal from Kettering |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of July, 2012.

. . . . . . . . . .

JAMES F. LONG, Atty. Reg. #0004980, Kettering Municipal Prosecutor's Office, 2325 Wilmington Pike, Kettering, Ohio 45420
  Attorney for Plaintiff-Appellee

LAWRENCE E. BARBIERE, Atty. Reg. #0027106, and J. MICHAEL MORGALIS, Atty. Reg. #0088288, 5300 Socialville-Foster Road, Suite 200, Mason, Ohio 45040
  Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Movant-appellant Mark A. Brooks appeals from an order of the trial court denying his motion to seal the records of his conviction for Impersonating a Police

Officer. Brooks contends that the trial court abused its discretion by: (1) finding that he was not rehabilitated; and (2) finding that the public's interest in maintaining the records of his conviction outweighed his interest in sealing them.

{¶ 2} We conclude that the evidence in the record permitted the trial court to find that Brooks had failed to prove that he was rehabilitated. Because this is a sufficient ground, in and of itself, for the trial court's decision to deny the motion, we find it unnecessary to address the other argument Brooks makes – that the public's interest in maintaining the records does not outweigh his interest in having them sealed. Accordingly, the order of the trial court from which this appeal is taken is Affirmed.

## I. The Course of Proceedings

{¶ 3} In the summer of 2008, Brooks was stopped for speeding on his motorcycle. The facts are set forth in *State v. Brooks*, 2d Dist. Montgomery Nos. 23386 and 23387, 2010-Ohio-1119, ¶ 2-4, as follows:

On July 2, 2004, Deputy Fred Zollers of the Montgomery County Sheriff's Office observed Brooks, on his motorcycle, traveling at a high * * * speed in a sixty-five mile per hour zone. Using his laser speed-measuring device, Zollers determined that Brooks was traveling at 100 miles per hour. Zollers initiated a traffic stop. When approached, Brooks indicated that he knew the reason for the stop. When told he was traveling at 100 miles per hour, Brooks responded, "for this bike, it's no big deal, you know." Zollers obtained Brooks' license and confirmed that it was valid and that Brooks had no outstanding warrants.

When he returned to Brooks, Zollers explained that he was citing him for speeding and warning him regarding his reckless operation of the motorcycle. After Brooks signed the ticket, Zollers asked him if he was familiar with the location of the Kettering Municipal Court where he was summoned pursuant to the citation. Brooks responded, "Yeah, I'm an officer." Brooks then displayed his wallet, which contained a badge cut-out, but there was no badge in the wallet. Zollers asked Brooks where he worked, and Brooks responded that he "worked the North Channel, I worked for Perry. Now I work for Miami Valley Campus Police." Brooks then handed Zollers a plastic Miami Valley Campus Police ID containing his photograph and his name. Zollers returned to his cruiser, radioed his supervisor, and then he returned to Brooks and told him that he was going to go through with the citation, despite the fact that Brooks had identified himself as a police officer.

Right after the stop ended, Zollers met with his supervisor, and his supervisor contacted the Miami Valley Campus Police to verify Brooks' employment. Zollers learned that Brooks had been terminated. Zollers' supervisor further determined that Brooks was no longer employed by Perry Township. Zollers and his supervisor then proceeded to Brooks' residence, arrested him, and took him into custody for impersonating a police officer.

{¶ 4} Following a trial, Brooks was convicted of Speeding, and of Impersonating a Police Officer, in violation of R.C. 2921.51. On the Speeding conviction, Brooks was fined $75, and his license was suspended for 60 days. On the Impersonating a Police Officer conviction, Brooks was fined $200 and assessed court costs. The trial court did not impose any jail sentence, even a suspended sentence, stating that it did not believe

Brooks had acted maliciously.

{¶ 5} Brooks first filed a motion to seal the records of his conviction for Impersonating a Police Officer in July, 2010. The trial court determined that his motion to seal was not ripe for determination, because Brooks still had appellate proceedings pending in the Supreme Court of Ohio (which ultimately declined to hear his appeal).

{¶ 6} Brooks filed the motion to seal with which we are concerned in November, 2011. The State opposed the motion. Following a hearing, the trial court denied the motion on two grounds: (1) that the trial court was not "convinced that [Brooks] has been rehabilitated to the satisfaction of the Court"; and (2) that the trial court found "unpersuasive" the evidence Brooks offered to prove that the government's interest in maintaining the records did not outweigh his interest in having them sealed.

{¶ 7} From the order denying his motion to seal the records of his conviction for Impersonating a Police Officer, Brooks appeals.

## II. The Trial Court's Finding that Brooks Failed to Prove that He Was Rehabilitated Is Neither Against the Manifest Weight of the Evidence Nor an Abuse of Discretion

{¶ 8} Brooks's sole assignment of error is as follows: "THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT-APPELLANT'S APPLICATION TO SEAL ALL OFFICIAL RECORDS OF HIS CONVICTION."

{¶ 9} Brooks moved for the sealing of the records of his conviction under the authority of R.C. 2953.32, which provides, in pertinent part, as follows:

If the court determines, after complying with division (C)(1) of this section, that the applicant is a first offender or the subject of a bail forfeiture, that no criminal proceeding is pending against the applicant, and that the interests of the applicant in having the records pertaining to the applicant's conviction or bail forfeiture sealed are not outweighed by any legitimate governmental needs to maintain those records, and that the rehabilitation of an applicant who is a first offender applying pursuant to division (A)(1) of this section has been attained to the satisfaction of the court, the court, except as provided in divisions (G) and (H) of this section, shall order all official records pertaining to the case sealed and, except as provided in division (F) of this section, all index references to the case deleted and, in the case of bail forfeitures, shall dismiss the charges in the case. The proceedings in the case shall be considered not to have occurred and the conviction or bail forfeiture of the person who is the subject of the proceedings shall be sealed, except that upon conviction of a subsequent offense, the sealed record of prior conviction or bail forfeiture may be considered by the court in determining the sentence or other appropriate disposition, including the relief provided for in sections 2953.31 to 2953.33 of the Revised Code.

{¶ 10} The trial court determined that Brooks was a first-time offender, and that no criminal proceedings were pending against him, neither of which was disputed. But the trial court also found "unpersuasive" the evidence Brooks offered to prove "why his personal interests outweigh the governmental interests * * * ." And the trial court also stated: "The Court has received no significant evidence on [the issue of rehabilitation], nor is the Court convinced that [Brooks] has been rehabilitated to the satisfaction of the Court."

{¶ 11} It is a small point, and one having no bearing on the disposition of this appeal,

but the test is not whether a movant's interests in having his records sealed outweigh the government's interests in maintaining them, but whether the government's interests outweigh the movant's interests. In other words, if the interests are in equipoise, this test favors the movant.

{¶ 12} Brooks contends that the trial court erred in both of its findings adverse to him. We consider first his contention that the trial court erred in finding that he had failed to prove his rehabilitation to the satisfaction of the court, since our disposition of this contention is dispositive of this appeal.

{¶ 13} Brooks offered only his own testimony in support of his motion. The State did not present any evidence. Brooks's testimony on the subject of his rehabilitation is worth quoting in full:

Q. And do you have any regrets over your decisions that you made after that [speeding on the motorcycle]?

A. Yes I do. Even, even being charged is, is punitive enough. You know, I mean, it's, it's tough, I mean, a conviction is, is even harder, you know, the charge itself, you know, makes me regret everything of that day that even that lead to, to any, any fruits of that offense.

Q. How do you feel your decision-making was that day?

A. Lack of judgment, it's, it's poor, poor decision-making.

Q. Do you think you've learned anything from that?

A. Well absolutely yeah, I mean, def, undoubtedly. I think it's, you know, not that the offense itself, but it's an eye opener. I believe in some ways it's made me

a better person, it really has. It's, like I said, it was an eye opener, but I regret everything that transpired that day between me and the deputy for sure.

Q. And.

A. Even the offense that lead up to that, you know.

Q. Now do you see any possibility that you would have such a lack of judgment in the future?

A. No. And I think my, you know, the record demonstrates that. You know, I've had, I have had one traffic incident, I think it was a conviction of a 39 miles an hour in a 35 zone, which was an ACD violation to be open with the Court. You know, I rear-ended somebody, but that was, you know, that was a car malfunction issue to be [sic], nonetheless, but still, you know, I think the record demonstrates that there's no incidents that would, lack of judgment has, you know, occurred relevant to the conviction.

{¶ 14} No other testimony was elicited having relevance to this issue.

{¶ 15} The statutory test is whether the rehabilitation of the movant "has been attained to the satisfaction of the court." This highlights that the issue of rehabilitation is peculiarly subjective, requiring great deference to the trial court on the part of a reviewing court.

{¶ 16} Brooks's testimony on the subject of rehabilitation is subject to varying possible interpretations. One construction that the trial court may have put on his testimony is that he regretted his charge and conviction for the offense of Impersonating a Police Officer more than he regretted the act, itself – having been dishonest with a sheriff's deputy. The

charge and the conviction were the things he first mentioned when asked about his regrets.

{¶ 17} Possibly, we would have construed Brooks's testimony differently. But we were not there; we did not see and hear him testify. The trial court was able to see and hear him, putting it in a much better position to evaluate whether Brooks was rehabilitated. We cannot say that the trial court's decision that Brooks failed to prove his rehabilitation is against the manifest weight of the evidence. Therefore, we cannot say that the trial court abused its discretion by finding against Brooks on this issue.

{¶ 18} Brooks cites *State v. Hilbert*, 145 Ohio App.3d 824, 764 N.E.2d 1064, (8th Dist. 2001). In that case, the Eighth District Court of Appeals reversed an order denying a motion to seal the records of a conviction. The court of appeals noted that the trial court had not provided any reasons for its decision. In that case, a black man had burned a cross "about two feet square" in front of his apartment building, to protest the ignoring of complaints he had made to various authorities that he was being racially harassed. He sought to have the records of his Criminal Mischief conviction sealed. At the hearing on his motion, he told the judge: "Your honor, what I did was stupid and what I did was wrong, and I know that." This denunciation of his criminal act is substantially different from the statements Brooks made expressing regrets over the charge and conviction, and the consequences for him. We conclude that *Hilbert* is distinguishable.

{¶ 19} Brooks also cites *State v. Auge*, 10th Dist. Franklin No. 01AP-1272, 2002-Ohio-3061, in which the Tenth District Court of Appeals reversed an order denying a motion to seal the records of a physician's conviction for Illegal Processing of Drug Documents. The doctor had written a fictitious prescription to another for an anabolic

steroid, a body-building drug, intending to fill it and use it himself. The sole basis for the trial court's denial of that motion was that the movant had not been rehabilitated.

{¶ 20} *Auge* deals with the difficult problem of proving rehabilitation when the movant is not willing to admit to having committed the offense of which he was convicted. The movant in that case acknowledged that in law he was guilty. He further acknowledged that the jury's guilty verdict was reasonable in view of the evidence before it.

{¶ 21} The most common way of proving rehabilitation is to offer proof along the lines of "I learned my lesson, I regret having committed my criminal act, and I will never do this again," which necessarily involves an admission of guilt. It is not, however, the only possible way to prove rehabilitation.

{¶ 22} In *Auge*, the movant offered impressive evidence of his good character since moving to New Mexico and obtaining a "restricted" license to practice medicine, after his Ohio conviction:

> In the words of the prosecutor at the hearing, appellant has "done wonderful things" professionally in New Mexico. [Citation to record omitted.] FN2. In particular, the doctor has devoted much of his professional time to treating impoverished persons, including the local Native American population, in extremely rural areas who would otherwise be without medical care. Because the rural area in which he practices is so impoverished, and otherwise "undesirable," the medical community there has trouble attracting physicians. Appellant and his partner are the only orthopaedic surgeons practicing in three hospitals.
>
> FN2. In addition to the prosecutor's acknowledgment at the hearing of

appellant's impressive professional accomplishments, we also note that, on appeal, the state concedes appellant's recitation of both the "statement of the case" and the "statement of the facts" as set forth in appellant's brief. The facts to which the state concedes include seven pages detailing appellant's accomplishments, accolades from his peers, and the primary need for the doctor's expungement. [Citation to appellee's brief omitted.]

Appellant has also shared his abilities and skills with other physicians in other parts of the world, including so-called "third-world countries," where he has traveled both to teach and to perform surgery, free of charge, for the desperately "needy." He has also authored several articles in his area of practice, has won several awards, and has worked with the New Mexico Medical Board to implement safeguards to prevent the misuse of prescription drugs. In short, the correspondence from appellant's colleagues reveal a highly respected, dedicated and skilled surgeon.

{¶ 23} The obvious problem with requiring, as an absolute condition of sealing the record of a criminal conviction, the movant's admission of guilt, is that to do so would compound the unjust effect of a wrongful conviction. It is paradoxical that an innocent person who has nevertheless been convicted of an offense because there was evidence of guilt beyond reasonable doubt will have no opportunity to obtain the sealing of his criminal record (unless he falsely admits guilt), no matter how saintly his present character, whereas a person who does not dispute his guilt may have that opportunity.

{¶ 24} The case before us does not involve that problem. Brooks no longer disputes his guilt. In fact, from our decision in the appeal from Brooks's conviction, it appears that he

never disputed the act; the argument he made was a legal one – that he was a "peace officer" within the contemplation of R.C. 2921.51. *State v. Brooks, supra*, at ¶ 64.

{¶ 25} The evidence Brooks presented in support of his rehabilitation was directed at his having "learned his lesson," from the offense. He did not present evidence of his subsequent good character, beyond the required proof that he had not committed a subsequent offense.

{¶ 26} At the oral argument of this appeal, Brooks cited *State v. M.D.*, 8th Dist. Cuyahoga No. 97300, 2012-Ohio-1545. That opinion cited *State v. Auge*, supra, and found that the movant, like the movant in *Auge*, had submitted impressive evidence that he had been rehabilitated in the ten years since his conviction, having proved that he "is a highly productive member of society, a valued friend, father, son, and husband, and a man of high moral character," and that he had "held gainful employment, ascended to a position with managerial responsibilities, rebuilt his reputation, has not committed any other crime, and has expressed sufficient remorse for his own actions in the context of this case." *State v. M.D., supra*, ¶ 10-14. The court of appeals also concluded that the trial court had erred by finding that the movant's reference to another employee's culpability in the offense demonstrated a lack of remorse. The court of appeals found that reference factual, and noted that the movant accepted responsibility for not having caught and remedied the other employee's conduct. *Id.*, ¶ 14. In our view, *State v. M.D.* is distinguishable.

{¶ 27} Brooks also cites from the trial court's decision for the proposition that he has been rehabilitated. As the State notes, however, in this part of the trial court's decision, it was simply reciting defendant's testimony, which the trial court then found "unpersuasive,"

and unconvincing.

{¶ 28} We conclude that the trial court's finding that Brooks failed to prove his rehabilitation to its satisfaction is neither against the manifest weight of the evidence, nor an abuse of discretion. Therefore, we need not address the issue of whether the trial court correctly weighed the interests of Brooks and the State, respectively. Failure of proof of rehabilitation is an independent ground upon which to deny a motion to seal, since the trial court must make both findings in the movant's favor before it seals the records.

{¶ 29} Brooks's sole assignment of error is overruled.


### III.  Conclusion

{¶ 30} Brooks's sole assignment of error having been overruled, the order of the trial court denying his motion to seal the records of his conviction for Impersonating a Police Officer is Affirmed.

. . . . . . . . . . . .

CUNNINGHAM, J., concurs.


GRADY, P.J., concurring:

{¶ 31} In the criminal law, rehabilitation is defined as "[t]he process of seeking to improve a criminal's character and outlook so that he can function in society without committing other crimes."  Black's Law Dictionary (7th Ed.).

{¶ 32} Defendant was convicted of a violation of R.C. 2921.51(B), which provides:

No person shall impersonate a peace officer, private police officer,

federal law enforcement officer, or investigator of the bureau of criminal identification and investigation.

{¶ 33}  "Impersonate" is defined by R.C. 2921.51(A)(4), which states:

"Impersonate" means to act the part of, assume the identity of, wear the uniform or any part of the uniform of, or display the identification of a particular person or of a member of a class of persons with purpose to make another person believe that the actor is that particular person or is a member of that class of persons.

{¶ 34}  R.C. 2921.51(B) is a fourth degree misdemeanor.  R.C. 2921.51(C), which prohibits making an arrest or detention while impersonating a police officer, and R.C. 2921.51(D), which prohibits impersonating a police officer with a purpose to commit a criminal offense, are first degree misdemeanors.  However, if the offense is a felony, a violation of R.C. 2921.51(D) is a fourth degree felony.

{¶ 35}  Unlike R.C. 2921.51(C) or (D), a violation of R.C. 2921.51(B) involves criminal conduct that is not *malum in se*, evil in itself, but *malum prohibitum*, a crime merely because it is prohibited by statute, although the act itself is not necessarily immoral.  Other *malum prohibitum* offenses include jaywalking or running a stop light, which are regulatory violations instead of violations involving a moral wrong.

{¶ 36}  It is difficult to show that a defendant convicted of a *malum prohibitum* offense has been rehabilitated when the offense did not involve a moral wrong; then, there was no bad character or outlook to be improved.  However, and ironically, Defendant's conduct in "flipping a badge," which in fact he no longer had, was apparently for the purpose of avoiding

a traffic citation for traveling 100 miles per hour on his motorcycle.   In that circumstance, the lie that the act of impersonation involved was for a bad purpose and portrayed a bad character and outlook.   To show that he had since been rehabilitated, it was Defendant's burden to demonstrate some related improvement in his character and outlook.   The trial court did not abuse its discretion in finding that Defendant's expression of regret for having committed the crime, largely because of the results that flowed from it, did not demonstrate his rehabilitation.

. . . . . . . . . . . . .

(Hon. Penelope R. Cunningham, First District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

James F. Long
Lawrence E. Barbiere
J. Michael Morgalis
Hon. Thomas M. Hanna